**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case Number: 25-mj-74** |
| **v.** | : | |
| | : | |
| | : | |
| **JAMIE SPIES,** | : | **Det. Hearing: May 20, 2025** |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request that defendant Jamie Spies be detained pending trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A). Ms. Spies is charged with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), based upon her distribution to an undercover officer on April 24th and 25th, 2025. Distribution of Child Pornography is a crime of violence and there is no condition or combination of conditions that will reasonably assure the safety of children in the community – both in the physical world and online – if Ms. Spies is released. As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is the only way to protect children in the community and to ensure the defendant's future appearance.

**FACTUAL BACKGROUND**

Leading up to April 24, 2025, a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI") Washington Field Office ("WFO") was working online in an undercover capacity ("UC") as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation and Human Trafficking Task Force, operating out of a satellite

office in Washington, D.C. In that capacity, the UC entered a public Kik[1] group which, based on the UC's experience, is a forum where people meet to discuss and trade original images and videos of underage children. While monitoring the group, an individual using the Kik name, "babygirll484" posted a message to the group stating, "I need a pervy daddy in my life." Shortly after posting this message "babygirll484" initiated a private Kik chat with the UC stating, "Heyyy." The UC responded and began a private chat with "babygirll484." The Kik user "babygirll484" was later identified as the defendant, Jamie Spies.

During the chat, "babygirll484" informed the UC that she is a 24-year-old female residing in Reading, Pennsylvania, and that she is the mother of a 16-month-old son. As part of the conversation, the UC asked "babygirll484" to take a picture of herself holding up four fingers near her chest for the purpose of validating that she was, in fact, female. The user "babygirll484" agreed to do so and sent the UC a live camera picture of herself. The picture depicted what appears to be a female wearing a brown tank top and holding up four fingers near her chest. The image did not show her face, but a portion of a tattoo is visible on the female's left forearm.

As the Kik chat continued on April 24, 2025, "babygirll484" stated, "I absolutely love perverts and pedos."[2] When the UC asked, "What's the naughtiest thing u done," "babygirll484" replied, "Ive never done anything with younger but I love cp[3] and watching men use really young. Always really wanted to fuck my real daddy." On the same date, "babygirll484" sent the UC a total of five video files via Kik private messenger, including:

---

[1] KIK is a free instant messaging mobile application that allows users to communicate in a group or private chat. Users can send and receive video and image files.

[2] "Pedos" is frequently used as a term for "pedophile."

[3] "CP" is frequently used as a term for "child pornography:

1. A fifty-second video depicting an adult male inserting the head of his penis into an infant's vagina and ejaculating.
2. A forty-three-second video showing an adult male inserting his erect penis in the anus of what appears to be an infant or toddler aged female. The infant/toddler is heard crying and screaming.
3. A twenty-five-second video depicting an adult male sticking the head of his erect penis inside a toddler's vagina. The toddler is on her back sucking on a pacifier and the male ejaculates on the toddler's vagina.
4. A nineteen-second video showing an adult male rubbing his erect penis head on an infant's vagina.
5. A one minute and twenty-six-second-long video showing a prepubescent female sucking an adult penis. The adult ejaculates in the child's mouth.

On Friday April 25, 2025, the UC resumed chat communications with "babygirll484" via Kik**.** On that date, ""babygirll484"" sent the UC one additional video, which was forty-nine seconds in length, depicting an adult male inserting his erect penis in the anus of a toddler female. The toddler is heard crying and saying, "no no no." As the chat continued, "babygirll484" also informed the UC that she masturbates to child pornography and stated, "I cum fast to them I don't last long."

During the Kik chat, the UC informed "babygirll484" that he was the father of 6-year-old girl and claimed that he is sexually active with his purported daughter when she is asleep. The UC also sent "babygirll484" approximately three pictures of his purported daughter.[4] The UC asked "babygirll484," "you never get tempted with your boy." In response, "babygirll484" stated, "I've

---

[4] The images do not depict a real child, nor do they depict child pornography.

had thoughts but I'd rather him try to do something when he's going through puberty. I wouldn't be upset if he has thoughts about fucking his mommy." The UC also asked, "Don't breast feed? Ever have thoughts." In response, "babygirll484" replied, "and I did for a little but it made me to horny I stopped myself."

The user operating "babygirll484" expressed an interest in the sexual exploitation of the UC's daughter saying, "If I get to see you play with your girl I'll fall in love." The UC responded, "Yes, I will just let me know what u want to see, I will research how much to give to knock her out cold so I can do more." The user of the "babygirll484" account then suggested, "maybe some melatonin too." At a different point in the chat she suggested Benadryl as a way to incapacitate the child. She further stated, I want to see you do as much as you can. I wanna see your cock touching her." She reiterated her desire to see the UC sexually abuse the child saying, "your pre cum sticking to her" and "I'd love so much to see that cock touching her pussy." At one point in the conversation, she even offered to "help hold her down on your cock."

During the interaction, "babygirll484" introduced herself to the UC as "Jamie" and sent the UC a still image and multiple erotic videos of herself, none of which included her face. The still image, depicted below as Exhibit 1, shows a female from the neck down wearing a bikini while holding a phone in her right hand. The image also shows a tattoo on the female's right forearm that appears to be some form of writing.

On April 24, 2025, an Emergency Disclosure Request (EDR) was served to Kik for username "babygirll484". Kik responded and provided email address bbwcumm@gmail.com. A subpoena was served to Google for that email address and Google provided the IP address 2607:fb90:6323:4e9:516d:31ea:e3bf:bc9a. An EDR was served to T-Mobile for that IP address and T-Mobile provided name [redacted] (hereinafter [redacted]), phone number [redacted],

and an address located in Reading, Pennsylvania. A search of an open-source database for that same address indicated that the address was also associated with a person identified as Jamie Spies, with a date of birth in [redacted] 2000.

A review of Spies publicly available social media showed photos that visually matched photos provided by "babygirll484," including a photo showing a tattoo consistent with that in the still image that "babygirll484" sent to the UC of herself in a bikini, described above as Exhibit 1.

The social media photo with the similar-looking tattoo is listed below as Exhibit 2.



***Exhibit 1***



***Exhibit 2***

The background in the photos in Exhibit 1 and Exhibit 2 appear to be similar, including the dark brown couch against which the female is standing, as well as the gold-colored mirror in which the photos in Exhibits 1 and 2 are both taken. Additionally, the color of the cellular phone case is similar in both Exhibits 1 and 2.

On April 24, 2025, "babygirll484" posted a video to the Kik group depicting herself engaging in intercourse as displayed in Exhibit 3 below. A portion of her face is visible in that

video. A Facebook account, believed to be utilized by Spies also posted a photograph of Spies laying in bed. The photograph is depicted in Exhibit 4.





***Exhibit 3*** ***Exhibit 4***

Both Exhibits 3, the video sent by username "babygirll484," and Exhibit 4, located on the Facebook profile believed to be utilized by Spies, depict similar color bedsheets, in addition to consistent facial features.

On the morning of May 2, 2025, law enforcement in the Eastern District of Pennsylvania executed a search warrant on the residence of Spies, located in Reading, PA. Upon entry into the residence, law enforcement encountered Spies, [redacted] and their 16-month-old son. Spies was arrested on site pursuant to a warrant issued by Magistrate Judge Moxila Upadhyaya, in the District Court for the District of Columbia, charging her with one count of Distribution of Child Pornography, in violation of 18 U.S.C. 2252(a)(2).

During the search, law enforcement recovered four digital devices, including a black iPhone, a white iPhone, a MacBook Air, and a thumb drive. As of the date of filing, the extractions of those devices has not yet been completed.

On May 5, 2025, the Court in the Eastern District of Pennsylvania held an initial appearance for Spies. The United States requested detention pursuant to 18 U.S.C. § 3142(f)(1)(A) and Magistrate Judge Pamela Carlos granted the motion the same date, ordering that Spies be detained pending a detention hearing in the District of Columbia. On May 15, 2025, Spies arrived in the District Court for the District of Columbia and the Court held her Initial Appearance in this district, at which the United States asked for Spies continued detention. A detention hearing is scheduled for Tuesday, May 20, 2025.

**APPLICABLE LEGAL STANDARD**

The defendant is charged with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), a crime of violence. 18 U.S.C. § 3156(c) defines a "crime of violence" to include violations of Title 110, under which § 2252(a)(2) falls. Further, § 2252(a)(2) gives rise to a rebuttable presumption of detention pursuant to 18 U.S.C. § 3142(e)(3)(E), where it is to be *presumed* that no combination of conditions will protect the community or assure the defendant's return. § 3142(e)(3)(E). This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant does not pose a flight risk, danger to the

community by itself is a sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

Defendant Spies poses a significant danger to children in the community – including children who are being preyed on over the internet as well as children in the physical world – and there are no conditions short of detention that will protect children from her predation. For the

reasons addressed below, the factors outline in 18 U.S.C. § 3142(g) weigh in favor of detention and Spies cannot rebut the presumption that she shall remain detained.

**A. Nature and Circumstances of the Charged Offense**

Defendant Spies – the mother of a 16-month-old son – specifically sought out a "pervy daddy" online and enthusiastically encouraged the sexual abuse of a 6-year-old girl for her own sexual gratification. As part of her online interactions with an individual who she had every reason to believe was abusing a child, she distributed child pornography, asked the "pervy daddy" to send her custom sexual abuse images of him raping his daughter, offered tips on how to incapacitate the child, and offered to help him to rape the child it the future. Spies's conduct in this case is appalling and illustrates the reasons that she is a danger to children both online and in the physical world. The nature and circumstances here strongly weigh in favor of detention.

As part of the offense, Spies distributed multiple images of child pornography to the UC over a two-day period – on April 24th and 25th, 2025 – the majority of which depicted the rape of infants and toddlers. The content that she shared with the UC not only included the youngest and most vulnerable victims, but also highlighted the pain and degradation that these young children experienced as they were being raped. For example, on April 24th, Spies distributed a video showing a female infant/toddler being anally raped while the child can be heard crying and screaming. On April 25th, Spies sent another video depicting the anal rape of a female toddler where the toddler is saying "no no no." Rather that show any modicum of compassion for these hurting children, Spies reiterated that she loves "watching men use really young" and that watching the misery of children being raped is sexually gratifying to her and enables her to "cum fast. Spies's distribution of content involving the youngest victims, some of whom were clearly in pain as they were abused, weighs in favor of detention.

In addition to distributing child pornography, Spies did so in the context of encouraging the sexual exploitation of a 6-year-old girl, all while seeking out opportunities to participate in that exploitation. Within the first 10 minutes of chatting with the UC, Spies learned that he was a "pedo" dad who abused his daughter, prompting her to immediately chime in with "so hot I wish I could watch you do stuff with her." She later asked a series of questions about the ways in which the UC had abused his purported daughter and expressed an interest in seeing videos of the abuse, including a video where "you try and get your cock inside her." When the UC hesitated, claiming that his daughter might wake up, she suggested that he could incapacitate her by using Benadryl or melatonin, exacerbating the potential danger facing a child in that situation. Spies then offered to participate in the abuse, noting that she would "help hold her down on your cock" and "teach her how to milk daddies cock." Her willingness to encourage abuse, to ask to watch the abuse, and eventually, to offer to participate in the abuse, demonstrates the profound danger that Spies presents to children in the community.

During the chats Spies also expressed a sexual interest in her own son, which is a factor that must be considered in determining whether there are any conditions under which Spies can be safely released into the community. Although Spies denied having ever abused the child, she indicated that she would "rather him try to do something when he's going through puberty," strongly suggesting that she was open to the idea of abusing him in the future. Her expressed willingness to consider the future abuse of her own son is part of the nature and circumstances of this offense and weighs in favor of detention.

Spies's conduct demonstrates that she poses a danger both to children in the physical world, as well as to children who are suffering the aftermath of having images of their sexual abuse distributed online. On a broad level, children depicted in sexually explicit images and videos are

victimized at the time the images were created, and they are re-victimized each time an individual, like the defendant, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.
>
> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Indeed, Congress has recognized the serious nature of crimes involving child pornography and the long-term damage that these crimes can cause, by specifying that these crimes carry a rebuttable presumption of detention. § 3142(e)(3)(E). Spies is alleged to have distributed child pornography in the context of actively discussing the sexual abuse of a young girl. In these circumstances, there is no combination of conditions that will protect children both online and in the physical world from the danger posed by the defendant and the Court should detain Spies pending trial.

**B. The Weight of the Evidence Against the Defendant**

The weight of the evidence against the defendant is very strong and weighs in favor of detention. The United States is in possession of the April 2025 Kik chats between "babygirll484" and the UC in which "babygirll484" indisputably distributed multiple images of child pornography on two different dates. In addition, there is strong evidence that Spies was the person operating the "babygirll484" Kik account and was the individual who distributed child pornography to the UC. For example, during the chats "babygirll484" provided multiple personal details, including that her name was "Jamie", that she is 24-year-old female, that she lived in Pennsylvania near Reading city, and that she had a 16-month-old son. All of those details are consistent with Jamie Spies. In addition, she also sent the UC several photos that did not include her face. The photos include a custom photo taken at the request of the UC in which she is holding up four fingers to her chest, as well as a selfie-style full body photo of herself in a bikini. The physical appearance of the female in those two photos is consistent with other known photos of Spies, including a photo that shows a similar looking tattoo on Spies's arm and that appears to have been taken in the same location as the bikini photo that Spies sent to the UC.

Further, the "babygirll484" Kik account is associated with the email address bbwcumm@gmail.com. According to Google, that email address is associated with IP address 2607:fb90:6323:4e9:516d:31ea:e3bf:bc9a. In turn, that IP address is associated with the name of [redacted] t an address in Reading, Pennsylvania, where Spies lived with [redacted] and their young son.

A district court must consider the weight of the evidence when assessing whether the defendant is a danger or poses a risk of flight and has broad discretion to determine the relative weight of each of the four Bail Reform Act factors. *See United States v. Blackson*, No. 23-CR-25

(BAH), 2023 WL 1778194, at *9 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) ("First, nothing in the BRA's text requires or alludes to a differing weighing of the factors nor any hierarchy among the factors."). No factor is categorically of greater or lesser weight than the others. As the Second Circuit Court of Appeals observed:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. What is more, certain factors might interact with one another in a particular case in a way that alters a court's analysis of a defendant's danger to the community or flight risk.

*United States v. Zhang*, 55 F.4th 141, 149-50 (2d Cir. 2022). In *Zhang*, the Second Circuit found that the district court gave appropriate weight to the second factor – the weight of the evidence – in determining that there was "significant evidence" that Zhang had in fact committed the charged murder. *Id.* at 150-51. Affirming the district court's relative reliance on the weight of the evidence in determining dangerousness, the court explained:

> In making a predictive assessment of the defendant's future dangerousness if released into the community, common sense and § 3142(g)(2) aligned with the district court's consideration of the strength of this evidence, especially coupled with the nature of the charged offense. It stands to reason that the more strongly the evidence indicated that the defendant committed the murder, the more likely he poses a danger to the community if released on bail.

*Id.* Similarly, in considering whether the defendant poses a risk of flight, the court explained that where "the evidence against a defendant is strong, it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight. *Id.* at 151-52.

The *Zhang* court's analysis has been cited approvingly in the District Court of the District of Columbia in *Blackson*, and its analysis holds true here as well. *Blackson,* 2023 WL 1778194,

at *9-10. The evidence against Ms. Spies is strong, suggesting both a heightened danger to the community as well as an elevated risk of flight. The strength of the evidence strongly supports detention, as it indicates the significant risk of danger posed by the defendant.

**C. History and Characteristics of the Defendant**

Defendant Spies is young mother to a 16-month-old son, and she has no known criminal history. These are certainly facts favorable to Ms. Spies. However, there is significant reason to believe that her alleged distribution of child pornography in April of 2025 is not the first time that she has engaged in such conduct. Upon investigating Spies's conduct in this case, law enforcement discovered that there have been six prior tips from the National Center for Missing and Exploited Children (NCMEC) regarding the upload of apparent child pornography from various Kik accounts tied to the email address bbwcumm@gmail.com. This is the same email address tied to the "babygirll484" Kik username used in this case. The prior NCMEC tips span the time frame of January 14, 2025, through April 16, 2025, and do not appear to have been previously investigated. Each of the six tips involves a different Kik username – including hxrnybbgirll, bbgirl, girlmessage1, babygirl54431, babygirlmessage, and babygirlmessage12 – but each of the usernames is ultimately associated with the bbwcumm@gmail.com email address. While law enforcement is still investigating the email address and its possible connection to Spies, the NCMEC tips spanning the first four months of 2025 raise a significant concern.

The United States appreciates that Spies has no known prior arrests. Nevertheless, in view of the prior NCMEC tips, the Court should exercise caution before deciding how much weight to give this fact.

**D. The Nature and Seriousness of the Danger to Any Person or the Community**

Finally, the sexual exploitation of children presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children. It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, *New York v. Ferber*, 458 U.S. 747 (1982), the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). 458 U.S. 758, n.9.

Moreover, as the Eastern District of New York has found:

> ...the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution

> of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

Given the risks that the defendant poses to children both in the physical world and online, there are no conditions or combination of conditions that will reasonably keep children in the community safe and assure her appearance if she is released. As such, this factor weighs heavily in favor of detention.

**CONCLUSION**

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

*/s/ Jocelyn Bond*
Jocelyn Bond
D.C. Bar No. 1008904
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 809-0793
Email: Jocelyn.Bond@usdoj.gov